**MAX PROTETCH, INC., Appellant,**

v.

**John A. HERRIN, Appellee.**

No. 14–10–00825–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 5, 2011.

Lawrence S. Rothenberg, Houston, for appellant.

Scott Kerr Vastine, Houston, for appellee.

Panel consists of Justices BROWN, BOYCE, and JAMISON.

## OPINION

MARTHA HILL JAMISON, Justice.

In this accelerated interlocutory appeal, appellant Max Protetch, Inc. (Protetch) challenges the trial court's denial of its special appearance. Concluding the court

has personal jurisdiction over Protetch, we affirm.

## Background

Appellee John A. Herrin is a resident of Houston. Protetch is a New York corporation authorized to fabricate, promote, price, and sell limited editions of the works of deceased artist Scott Burton. Max Protetch (Mr. Protetch) is the president of Protetch. According to Mr. Protetch, Protetch has eight full-time and part-time employees, all of whom work in New York.

In 2005, after researching Burton's furniture designs and personally inspecting pieces in galleries in San Antonio, Dallas, and Protetch's gallery in New York City, Herrin contracted to purchase a four-hundred pound stainless-steel Scott Burton table from Protetch. All negotiations leading to the contract occurred in New York, and sale of the table occurred there. Herrin assumed responsibility for shipping the piece from New York to Texas, with the sale expressly "FOB New York." [1]

Herrin made three equal payments, two of which he drafted in Houston and sent to Protetch in New York. According to Herrin, before he received the table, Protetch employees regularly communicated with him.

In May 2007, the table was delivered to Herrin's residence in Houston. Herrin observed that the table was damaged and did not conform to the agreed specifications, particularly with regard to the color of the finish. According to Herrin, he immediately informed Protetch the table was non-conforming; and, thereafter, Protetch employees repeatedly contacted him regarding the table.

In July 2007, Mr. Protetch traveled to Houston to participate in a panel discussion at the Museum of Fine Arts. While in Houston, Mr. Protetch inspected the table at Herrin's home. It is not clear which party initiated the visit.

According to Herrin, Mr. Protetch acknowledged in Herrin's home that the table was damaged, and Herrin further told Mr. Protetch he would not accept the table with its current finish. Mr. Protetch told Herrin he would have the table repaired and it could also be refinished.

The table was returned to New York, allegedly at Herrin's expense, but it could not be repaired or refinished.[2] Protetch did not return the table to Herrin, but, according to Herrin, Mr. Protetch indicated the company would construct another table conforming to the agreed specifications. When Herrin received photographs of the second table, he concluded the second table also did not meet the specifications. After communicating with Protetch employees, Herrin believed Protetch would not construct and deliver a conforming table, and he requested that Protetch refund his money. According to Herrin, Protetch then ceased communication with him. Protetch kept both tables and Herrin's money.

On May 8, 2009, Herrin sued Protetch, alleging claims for breach of contract and violation of the Texas Theft Liability Act.[3]

---

1. Mr. Protetch sets forth this fact in his affidavit. The contract is not part of the appellate record. Shipment of the table "FOB New York" implies title to the table passed from Protetch to Herrin in New York. *See Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 807 (Tex.2002).

2. At the special appearance hearing, Herrin's attorney stated it was Herrin who paid to have the table returned to New York.

3. *See* Tex. Civ. Prac. & Rem.Code §§ 134.001–.005. Herrin initially also sued the New York Museum of Modern Art, but deleted the museum from his second amended petition.

Herrin alleged, "Max Protetch, Inc. is a New York Corporation that does business in the State of Texas, but does not maintain a regular place of business or a designated agent for service of process, as required by Texas law."

Protetch filed a verified special appearance "to the entire proceeding" and an answer subject thereto. Protetch alleged it is a corporation organized under the laws of New York, with its principal place of business in Manhattan, New York. Protetch argued the court had neither general nor specific jurisdiction over it. In a subsequently filed affidavit, Mr. Protetch averred, "All negotiations occurred in New York, and the sale of the piece, for $65,000.00, occurred in New York. Plaintiff assumed responsibility for shipping the piece from New York to Texas, and the sale was expressly 'FOB New York.'"

On August 16, 2010, Herrin filed a second amended petition, adding a claim for fraud and the following jurisdictional facts: (1) Mr. Protetch met with Herrin at Herrin's home in Houston and made representations which resulted in the table's return to New York; and (2) Max Protetch's employees regularly contacted Herrin in Houston about Herrin's dissatisfaction with both tables, but abruptly ceased contact when Herrin demanded a refund. On the same date, the court held a non-evidentiary hearing, during which Herrin acknowledged he was not asserting general jurisdiction. The court denied Protetch's special appearance, and this interlocutory appeal ensued.

### Analysis

In its sole issue, Protetch argues the trial court erred in denying its special appearance because Texas does not have specific jurisdiction over Protetch.

### Burden of Proof and Standard of Review

■ The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident within the provisions of the long-arm statute. *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). The nonresident defendant then bears the burden of proof to negate all bases of personal jurisdiction asserted by the plaintiff. *Kelly v. Gen. Interior Constr. Inc.,* 301 S.W.3d 653, 658 (Tex.2010).[4]

■ If the plaintiff does not plead sufficient jurisdictional facts, the defendant meets its burden to negate jurisdiction by proving it is not a Texas resident. *Id.* at 658–59. In determining whether the plaintiff satisfied its burden, a court may consider the plaintiff's pleadings as well as its response to the defendant's special appearance. *See* Tex.R. Civ. Pro. 120a(3); *Touradji v. Beach Capital P'ship, L.P.,* 316 S.W.3d 15, 23 (Tex.App.-Houston [1st Dist.] 2010, no pet.). In conducting our review, we accept as true the allegations in the petition. *Pulmosan Safety Equip. Corp. v. Lamb,* 273 S.W.3d 829, 835 (Tex. App.-Houston [14th Dist.] 2008, pet. denied).

4. Protetch argues Herrin has the burden of proof to establish the district court has jurisdiction over it. In support it cites *Mesa Agriproducts, Inc. v. Olabi International, S.A.,* a Federal Rule of Civil Procedure 12(b)(2) action in which the court stated, "The burden rests on the plaintiff to establish that the court has personal jurisdiction over a nonresident defendant who moves for dismissal." No. H-07-1336, 2007 WL 2777773, at *2 (S.D.Tex. Sept. 21, 2007). We are not bound by the *Mesa* court's statement regarding the burden of proof, and to the extent it is inconsistent with *Kelly,* we decline to follow it. Moreover, the *Mesa* court continued, "Where, as here, the district court does not hold an evidentiary hearing on the issue, the plaintiff meets this burden by presenting a *prima facie* case that personal jurisdiction is proper." *Id.*

The existence of personal jurisdiction is a question of law. *BMC Software*, 83 S.W.3d at 794. On appeal, we consider all of the evidence before the trial court on the question of jurisdiction. *Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 845 (Tex.App.-Houston [14th Dist.] 2010, no pet.)

When, as in the present case, a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, we infer "all facts necessary to support the judgment and supported by the evidence." *BMC Software*, 83 S.W.3d at 795; *Horizon*, 324 S.W.3d at 846. These inferred findings are not conclusive, however, and may be challenged for legal and factual sufficiency when this court has a complete record on appeal. *BMC Software*, 83 S.W.3d at 795; *Cerbone v. Farb*, 225 S.W.3d 764, 767 (Tex.App.-Houston [14th Dist.] 2007, no pet.).

### Legal Principles Relevant to Personal Jurisdiction

Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex.2007); *Horizon*, 324 S.W.3d at 847. The long-arm statute provides in relevant part:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:
>
> (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; [or]

(2) commits a tort in whole or in part in this state. . . .

Tex. Civ. Prac. & Rem.Code § 17.042.

The "doing business" language "allows the statute to 'reach as far as the federal constitutional requirements of due process will allow.'" *Moki Mac*, 221 S.W.3d at 575 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C*, 815 S.W.2d 223, 226 (Tex. 1991)). Therefore, when a jurisdictional assertion meets federal due process standards, the Texas long-arm statute requirements are also satisfied. *Id.; Horizon*, 324 S.W.3d at 847.

State statutory and federal due-process requirements are satisfied if (a) the nonresident has minimum contacts with Texas, and (b) exercise of personal jurisdiction over the nonresident does not offend traditional notions of fair play and substantial justice. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). Minimum contacts suffice for personal jurisdiction when the non-resident purposefully avails itself of the privilege of conducting activities within the forum state and thus invokes the benefits and protections of its laws. *Moki Mac*, 221 S.W.3d at 575; *Horizon*, 324 S.W.3d at 847.

The "purposeful availment" inquiry has three parts. *Moki Mac*, 221 S.W.3d at 575; *Horizon*, 324 S.W.3d at 847. First, only the defendant's contacts with the forum are relevant. *Moki Mac*, 221 S.W.3d at 575; *Horizon*, 324 S.W.3d at 847–48. Second, the contacts on which jurisdiction depends must be purposeful, rather than random, fortuitous, or attenuated. *Moki Mac*, 221 S.W.3d at 575; *Horizon*, 324 S.W.3d at 848. Third, "the

'defendant must seek some benefit, advantage or profit by "availing" itself of the jurisdiction.'" *Moki Mac,* 221 S.W.3d at 575 (quoting *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 785 (Tex.2005)).

When, as in this case, the plaintiff alleges only specific jurisdiction, we focus on the relationship among the defendant, the forum, and the litigation. *Id.* at 575–76. "Specific jurisdiction is established if the defendant's alleged liability 'aris[es] out of or [is] related to' an activity conducted within the forum." *Id.* at 576 (quoting *Helicopteros,* 466 U.S. at 414, n. 8, 104 S.Ct. at 1872 n. 8). The relevant test for relatedness is whether a substantial connection exits between the defendant's forum contacts and the operative facts of the litigation. *Id.* at 585; *Horizon,* 324 S.W.3d at 849.

If the nonresident defendant has minimum contacts with the forum state, we must then determine whether exercise of personal jurisdiction over the nonresident offends traditional notions of fair play and substantial justice. *Horizon,* 324 S.W.3d at 851. In making this determination, we consider (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Id.* When the nonresident defendant has purposefully established minimum contacts with the forum state, only in rare instances will the exercise of jurisdiction not comport with fair play and substantial justice. *Id.*

### *Application to Jurisdictional Facts*

#### *The Long-arm Statute*

As set forth above, Herrin, a Texas resident, alleged in part that (1) he and Protetch entered into a contract which involved delivery of a table in Texas and (2) Protetch's president made misrepresentations to him while in Texas. Thus, Herrin alleged Protetch did business in the state so as to bring it under Texas Civil Practice and Remedies Code section 17.042.[5] *See* Tex. Civ. Prac. & Rem.Code § 17.042. We therefore consider whether exercise of jurisdiction over Protetch is consistent with due process guarantees.

---

5. Protetch contends Herrin is attempting to convert a contract claim into a tort claim in order to "bootstrap" personal jurisdiction in Texas. Protetch urges that the contract is the sole source of the duty allegedly breached. In support, Protetch relies on *Southwestern Bell Telephone Co. v. DeLanney,* 809 S.W.2d 493 (Tex.1991).

In *DeLanney,* the plaintiff alleged only claims in negligence based on Bell's failure to publish DeLanney's real estate advertisement in the Yellow Pages as promised. *Id.* at 493. The supreme court, however, concluded Bell's duty to publish the advertisement arose solely from contract, not from tort, and reversed judgment for DeLanney. *Id.* at 494–95.

Here, Herrin alleged torts separate from Protetch's alleged failure to fulfill the terms of the contract. Herrin's fraud and theft claims arise out of alleged misrepresentations that purportedly induced Herrin to return the table to New York. We decline to adopt Protetch's argument. *See Charles R. Weber Co., Inc. v. Back–Haul Bulk Carriers, Inc.,* No. 14–02–00240–CV, 2002 WL 31769418, at *2 (Tex. App.-Houston [14th Dist.] Dec. 12, 2002, no pet.) (not designated for publication) (rejecting appellant's argument that jurisdiction over it could not be based on alleged tort claims because they all arose out of contract when alleged conduct—falsely representing it had prepared a document which was the subject of the contract—gave rise to potential liability independent of whether a contract existed between the parties).

### Due Process—Minimum Contacts

■ To determine whether the pleadings and jurisdictional facts establish the minimum contacts component of federal due process, we consider whether those facts show (1) Protetch purposefully availed itself of the privilege of operating in Texas and (2) Protetch's alleged liability arises out of, or is related to, an activity it conducted within Texas. *See Moki Mac,* 221 S.W.3d at 575–76.

#### Purposeful Availment

■ It is essential there be some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum state such that the defendant can reasonably foresee being haled into court there. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); *Michiana,* 168 S.W.3d at 784. As set forth above, three factors are relevant to the purposeful availment inquiry.

*Protetch's contacts.* First, only Protetch's Texas contacts, not those of Herrin or a third party, are relevant to the analysis. *Moki Mac,* 221 S.W.3d at 575; *Horizon,* 324 S.W.3d at 847–48. In his pleadings and response to Protetch's special appearance, Herrin alleged the following Texas contacts by Protetch:

- before delivery of the table, Protetch's employees regularly communicated with Herrin in Houston;

- Protetch delivered the table to Herrin in Harris County;

- Protetch's employees regularly contacted Herrin in Houston regarding Herrin's dissatisfaction with the original table;[6]

- Mr. Protetch, on behalf of Protetch, met with Herrin at Herrin's home in Houston, during which visit, Mr. Protetch misrepresented that the table could be repaired and refinished;

- after the table was returned to New York and it was clear the table could not be refinished, Mr. Protetch represented to Herrin he would make a second, conforming, table;

- Protetch sent photographs of the second table to Herrin in Houston; and

- Protetch's employees contacted Herrin in Houston regarding the second table.

■ Merely contracting with a resident of the forum state or engaging in communications during performance of the contract generally is insufficient to subject a nonresident to the forum's jurisdiction. *See Olympia Capital Assocs., L.P. v. Jackson,* 247 S.W.3d 399, 417 (Tex.App.-Dallas 2008, no pet.); *Credit Commercial de France, S.A. v. Morales,* 195 S.W.3d 209, 220–21 (Tex.App.-San Antonio 2006, pet. denied). In the present case, however, Herrin not only alleged a contract to be performed in part in Texas, but also regular communication between Protetch personnel and Herrin, including a face-to-face meeting in Houston during which Mr. Protetch allegedly made misrepresentations inherently related to the contract and which could support a separate cause of action in tort.

*Purposeful contacts.* The second part of the purposeful-availment analysis requires that the contacts on which jurisdiction depends must be purposeful, rather

---

**6.** There is nothing in the record to indicate which party initiated the pre- and post-delivery communications. We will, however, infer that Protetch initiated at least some of these communications. *See BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 795 (Tex. 2002) ("When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied.").

than random, fortuitous, or attenuated. *Moki Mac,* 221 S.W.3d at 575; *Horizon,* 324 S.W.3d at 848. As discussed above, Herrin alleges regular communication with Protetch employees. Thus, the present case differs from *Michiana,* in which the alleged tort occurred in a single telephone conversation initiated by a Texas resident. *See Michiana,* 168 S.W.3d at 791–92.

Herrin also relies on Mr. Protetch's visit to Houston and the alleged misrepresentations Herrin made during that visit. In his affidavit, Herrin averred, "Mr. Max Protetch . . . informed me that he would be traveling to Houston in July 2007 and that he wanted to inspect the table prior to taking any further action." In contrast, Mr. Protetch averred that, by the time of his 2007 visit, Herrin "had already received the Scott Burton table. He asked me to come to his location to view the Scott Burton piece because he had complaints with that table. Because I was in Houston for the speaking engagement, I agreed to his request." Thus, the parties dispute who initiated the contact in Houston. Assuming (as would support the judgment) that Mr. Protetch initiated the Houston contact, we hold that this meeting and the representations allegedly made there were purposeful contacts. *See Horizon,* 324 S.W.3d at 848–49 (concluding two meetings in Houston were purposeful when Texas resident did not compel foreign residents to attend and representations foreign residents made in Houston could have concerned critical aspects of contract previously executed); *see also Alliance Royalties, LLC v. Boothe,* 329 S.W.3d 117, 126 (Tex.App.-Dallas 2010, no pet.) (stating trial court could have concluded appellant had purposeful contacts with Texas when transactions involved Texas real property, contracts with Texas entities, travel to Texas, representations made in Texas, and attempts at dispute resolution in Texas); *GJP, Inc. v. Ghosh,* 251 S.W.3d 854, 879 (Tex.App.-Austin 2008, no pet.) (observing that, although South Dakota defendant's previously-planned trip to Texas may have fortuitously created a good opportunity to perform the subject sale of car in Texas, defendant nevertheless acted purposefully in opting to do so).

Although the telephone communications alone may not amount to sufficient minimum contacts, *see Michiana,* 168 S.W.3d at 791 ("[C]hanges in technology have made reliance on phone calls obsolete as proof of purposeful availment."), the face-to-face meeting in Houston tips the scales. At that meeting, a purposeful contact on Texas soil, Mr. Protetch made representations that form a substantial portion of the core of the litigation. Moreover, the meeting amounted to more than just allegedly committing a tort in Texas. *See id.* at 788–91 (discussing committing a tort in Texas as basis for personal jurisdiction). Mr. Protetch voluntarily came to Texas, and while he was here he purposefully conducted business with a Texas resident. Because of Mr. Protetch's actions, we believe Protetch crossed a bright line and purposefully availed itself of the privilege of conducting business in Texas.

*Benefit, advantage, or profit.* In analyzing purposeful availment, we last consider whether Protetch sought a benefit, advantage, or profit by availing itself of Texas. *See Moki Mac,* 221 S.W.3d at 575; *Michiana,* 168 S.W.3d at 785 & n. 32. The trial court could have found that Protetch sought to benefit in two regards. First, by virtue of the contract, it would, and allegedly did, receive payments totaling $65,000 from Herrin. Second, by virtue of the purported misrepresentations in Houston and the subsequent refusal to return Herrin's payment, Protetch now has both the table and Herrin's payment.

For the preceding reasons, we conclude the pleadings and evidence support the conclusion that Protetch purposefully availed itself of the privilege of conducting activities in Texas.

### Substantial Connection to the Operative Facts of the Litigation

We further conclude there was evidence Herrin's claims arose out of, or were related to, Protetch's business contacts with Texas, i.e., that there was a substantial connection between Protetch's business contacts with Texas and the operative facts of the litigation. *See Moki Mac,* 221 S.W.3d at 576, 585; *see also Michiana,* 168 S.W.3d at 791 ("Business contacts are generally a matter of physical fact, while tort liability (especially in misrepresentation cases) turns on what the parties thought, said, or intended. Far better that judges should limit their jurisdictional decisions to the former rather than involving themselves in trying the latter."). Herrin's breach-of-contract claim arises out of delivery of a non-conforming table in Houston and out of pre- and post-delivery communications from Protetch to Herrin. Herrin's theft and fraud claims arise out of Mr. Protetch's alleged misrepresentations in Houston, which purportedly induced Herrin to return the table to New York at his own expense. Thus, Protetch's communications in and to Texas will form the core of the litigation. *See Glencoe Capital Partners II, L.P. v. Gernsbacher,* 269 S.W.3d 157, 167 (Tex.App.-Fort Worth 2008, no pet.) ("Unlike the misrepresentations in *Moki Mac,* which were tangential to the plaintiffs' core negligence claim, Appellants' misrepresentations in this case are the core of Appellees' claims.").

In sum, we conclude the pleadings and evidence support the conclusion that Pro-

tetch established minimum contacts with Texas.

### Due Process—Fair Play and Substantial Justice

In a special appearance, a defendant must present " 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.' " *Guardian Royal Exch.,* 815 S.W.2d at 231 (quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2185). Protetch argues, "It would be inefficient and burdensome to conduct discovery and a trial in Texas when all the witnesses and evidence are far outside the state.... In contrast, Texas has no particular interest in the dispute between [Herrin] and Protetch, as none of [Protetch's] alleged conduct took place in Texas, and as Texas law would not apply to an action between [Herrin] and Protetch."

According to Herrin, he communicated with only three Protetch employees, including Mr. Protetch. Herrin also alleged his wife was actively involved in purchase of the table. Thus, contrary to Protetch's assertion, the potential witnesses appear more or less evenly divided between Texas and New York.[7] Neither party suggests what physical evidence might be necessary for trial. Although the tables are obviously germane to the issues, it is not clear that their physical presence is required.

Also contrary to Protetch's assertion, alleged conduct took place in Texas. Additionally, Protetch provides no support for its assertion that Texas law would not apply to an action between itself and Herrin nor why application of New York law might be an obstacle for a Texas court. Finally, Texas has a manifest interest in providing its residents with a convenient forum for redressing injuries that out-of-

---

**7.** At the hearing, Protetch also referred to another potential witness, the manufacturer, in New York. Herrin points to his having observed Scott Burton's work at museums in Dallas and San Antonio, possible locations of additional witnesses.

state actors inflict. *Glencoe,* 269 S.W.3d at 168 (citing *Burger King,* 471 U.S. at 479–82, 105 S.Ct. at 2185–87).

As discussed above, Protetch purposefully established minimum contacts with Texas. We conclude the exercise of personal jurisdiction over Protetch would not offend traditional notions of fair play and substantial justice. *See id.*

### Conclusion

For the preceding reasons, we overrule Protetch's sole issue. We therefore affirm the trial court's order denying Protetch's special appearance.