

# NUMBER 13-13-00487-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

STEVEN RICHARD RAHL A/K/A
JAMES MICHAEL BECKER AND
ATLANTIS SOLAR, LLC,                                    Appellants,

v.

MARDEL SOUZA, INC.,                                      Appellee.

### On appeal from the 357th District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Perkes
### Memorandum Opinion by Justice Perkes

In this interlocutory appeal, appellants Steven Richard Rahl a/k/a James Michael Becker and Atlantis Solar and Wind, L.L.C. (Atlantis) appeal the denial of their special appearance in a suit brought by appellee, Mardel Souza, Inc. (Mardel). By two issues, which we construe together, appellants argue the trial court erred in denying their special

appearance because: (1) Mardel failed to carry its initial burden of pleading sufficient facts to confer jurisdiction under Texas' long-arm statute; and (2) Rahl and Atlantis did not purposefully avail themselves of the privileges of conducting business in Texas and did not have sufficient contacts in Texas to subject them to Texas jurisdiction. We affirm.

## I.  BACKGROUND

### A.  Parties

Mardel brought claims against Rahl and Atlantis in Cameron County, Texas for common law fraud, negligence, negligent misrepresentation, breach of contract, tortious interference with existing contracts, and tortious interference with prospective relations. There are two named defendants:

1. Richard Steven Rahl a/k/a James Michael Becker, a Florida resident.[1]

2. Atlantis Solar, LLC, a nonresident limited liability company with a service address in New York.[2]  Rahl is the president of Atlantis.

### B.  Facts

Mardel sells and installs solar panels and lights.  Mardel's owner, Alejandro Pena, contacted Atlantis after conducting an internet search for companies that sold solar panels and related equipment.  Pena spoke on the telephone with Rahl about purchasing some products.  Rahl agreed and for several years, Mardel purchased products from Atlantis and sold them in Texas.  After initially receiving orders without incident, Mardel received incomplete and incorrect shipments, and then received orders six months late.

---

[1] Mardel asserts that Rahl and Becker are the same person.  Whether that is true is irrelevant to this appeal on jurisdictional grounds.  For simplicity, we will use "Rahl" to refer to both Steven Rahl and Michael Becker.

[2] Mardel's first amended petition states that Atlantis has a New York address.  In its motion for service by publication, Mardel claims that Atlantis and Rahl can both be served by publication in Florida.

2

The business relationship apparently broke down when Mardel failed to receive its orders at all. The resulting delay forced Mardel to cancel orders and refund customers' money at a loss.

Approximately nineteen months after filing the original petition and after several failed attempts at service at Rahl's address in Florida, Mardel moved for substituted service on both defendants.[3] In its motion, Mardel stated that Rahl is the registered agent of Atlantis and that service on both defendants could be effected at an apartment in Naples, Florida. The next month, the court ordered citation by publication on both defendants in Collier County, Florida. Approximately four months later, Rahl and Atlantis filed a joint special appearance claiming the trial court lacked personal jurisdiction. The special appearance included an affidavit from Rahl stating that he is the president of "Atlantis Solar and Wind, LLC"[4] and denying: (1) entering "into any contracts in the State of Texas," (2) engaging in business activities in Texas, and (3) entering into any contracts for the sale or delivery of "any products I manufacture" with Mardel.

Mardel filed a response to defendants' special appearance and included several screenshots from Atlantis's website. The first screenshot showed a picture of a work crew with the caption "Texas brings homes and businesses green. Atlantis Solar Thermal Assist Air Conditioner." The second screenshot showed Atlantis's dealer and distributor information. Under the heading "USA Texas" was the statement that "Mr. Alex

---

[3] The record does not show whether service on Atlantis's New York address, as stated in the petition, was ever attempted.

[4] According to Rahl, "Atlantis Solar, LLC" is the name of a New Jersey company that attempted to infringe on Rahl's trademark "Atlantis Solar." However, Rahl does not assert that Atlantis Solar is an improper party in this case.

3

Pena is no longer a distributor for Atlantis Solar."  Directly below the statement was a heading styled "USA Texas Distributor / Dealer Inquiry."

During a hearing on the special appearance, Alejandro Pena testified that he owns Mardel Souza, Inc. and that he had a business relationship with Atlantis and Rahl.  Pena testified that he previously ordered products from Atlantis and resold them in Texas. Pena stated that he discussed the orders "several times" with Rahl.  Pena stated that although he was never employed by Atlantis, Atlantis represented to potential buyers that Pena was an engineer for Atlantis.  Pena also introduced an email where Atlantis claimed to have showrooms in Brownsville and Harlingen,[5] Texas.

Pena testified he had regular communication with Atlantis, including discussing the sales of Atlantis products in Harlingen, Laredo, and Brownsville.  Pena further testified that he discussed the distribution of Atlantis products throughout Texas and, at Rahl's request, met with potential customers as an Atlantis representative.  Pena claimed he met with several Texas companies and municipalities for the purpose of showing Atlantis products and that Rahl was aware of those meetings.

Mardel also claims that Atlantis misrepresented ownership of factories in China. During cross-examination, Pena testified about a trip he took to China to inspect the factories:

| | |
|---|---|
| [Atlantis Counsel]: | All right. What did they [Atlantis] lie to you about? |
| [Pena]: | First of all, they said that they had factories. |
| [Atlantis Counsel]: | Okay. |
| [Pena]: | In the terms of my trips, I did not see a single |

---

[5] Pena clarified that Rahl mistakenly referred to Harlingen as "Harington."

factory that actually belonged to them.

[Atlantis Counsel]:        Okay. Did you rely on that?

[Pena]:        Yes.

Only Pena testified at the special appearance hearing. After the hearing, the trial court denied appellants' special appearance. This appeal followed.[6]

## II.    PERSONAL JURISDICTION

The sole issue before this court is whether a Texas court may assert personal jurisdiction over appellants.[7] Appellants argue that Texas does not have personal jurisdiction because: (1) Mardel failed to meet its initial burden of pleading sufficient facts to confer jurisdiction under Texas' long-arm statute; and (2) appellants did not purposefully avail themselves of the privileges of conducting business in Texas and did not establish minimum contacts.

## A.    Standard of Review and Applicable Law

The question of a court's exercise of personal jurisdiction over a nonresident defendant is one of law which we review de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to

---

[6] Appellants filed a request for findings of fact and conclusions of law, but failed to file the reminder. TEX. R. CIV. P. 296–297. Although appropriate and helpful, none were filed. *Goodenbour v. Goodenbour,* 64 S.W.3d 69, 75 (Tex. App.—Austin 2001, pet. denied). A party that does not file a notice of past-due findings waives the right to complain that the trial court did not file them. *Gnerer v. Johnson*, 227 S.W.3d 385, 389 (Tex. App.—Texarkana 2007, no pet.).

[7] Rahl and Atlantis are represented by the same attorney and filed a joint brief. For simplicity, we construe them together as appellants.

support the judgment and supported by the evidence are implied. *Id.* at 795; *see Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).[8]

Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees. *See Moki Mac*, 221 S.W.3d at 574; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). Under the Texas long-arm statute, the plaintiff bears the initial burden of pleading allegations sufficient to confer jurisdiction. *Experimental Aircraft Ass'n, Inc. v. Doctor*, 76 S.W.3d 496, 502 (Tex. 2002); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013); *see Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333, 337 (Tex. 2009). Once the initial burden is met, the burden shifts to the defendant to negate all potential bases for personal jurisdiction that the plaintiff pleaded. *Moncrief,* 414 S.W.3d at 149. The defendant must negate all bases for personal jurisdiction to prevail in a special appearance. *Nat'l Indus. Sand Ass'n. v. Gibson*, 897 S.W.2d 769, 772 (Tex. 1995); *Citrin Holdings, LLC v. Minnis*, 305 S.W.3d 269, 279 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

The Texas long-arm statute reaches as far as the federal constitutional requirements of due process will allow. *Moki Mac*, 221 S.W.3d at 575 (*citing Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.

---

[8] When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 666 (Tex. 1987). However, we do not have a challenge for legal and factual sufficiency before us.

1991)); *see Schlobohm*, 784 S.W.2d at 357; *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977). Thus, the requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations. *See Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002); *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996); *Schlobohm*, 784 S.W.2d at 357.

Pursuant to federal due process requirements, personal jurisdiction is proper when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant "'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (*quoting Int'l Shoe Co.*, 326 U.S. at 319); *Moki Mac*, 221 S.W.3d at 575; *see Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005).

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *See Culture Collection,* 83 S.W.3d at 806. Specific jurisdiction requires that the cause of action arise from or relate to the nonresident defendant's contacts with the forum. *See Guardian,* 815 S.W.2d at 228. General jurisdiction, on the other hand, allows a forum to exercise jurisdiction over a defendant even if the cause of action did not arise from or relate to a defendant's contacts with the forum. *Id.* General jurisdiction is present when a defendant's contacts with a forum are "continuous and systematic," a

7

more demanding minimum-contacts analysis than specific jurisdiction. *Id.* In determining whether general jurisdiction exists, all contacts must be carefully investigated, compiled, sorted, and analyzed for proof of a pattern of continuing and systematic activity. *IRA Res., Inc. v. Griego*, 235 S.W.3d 263, 266 (Tex. App.—Corpus Christi 2007, no pet.); *see Culture Collection,* 83 S.W.3d at 808; *Schlobohm*, 784 S.W.2d at 359. The court need not address general jurisdiction if it finds that a defendant is subject to specific jurisdiction. *Citrin*, 305 S.W.3d at 279.

**B.    Analysis**

**1.    The Long-Arm Statute**

Mardel alleges it contracted with appellants to purchase products that were delivered to Texas. Mardel's petition alleges that appellants did business in Texas in accordance with Texas Civil Practice and Remedies Code section 17.042. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West, Westlaw through 2013 3d C.S.). Appellants argue that because Mardel's pleading fails to explain which activities give rise to each cause of action and which activities constitute business, the pleading is insufficient to satisfy our long-arm statute.

We disagree with appellants. Mardel's petition states it entered into a contract for delivery of products to Texas and that appellants made various misrepresentations associated with the contract. Mardel's pleading meets the minimal requirements of the Texas long-arm statute. *See Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 885 (Tex. 2011). The broad language of the long-arm statute means that when a jurisdictional assertion meets federal due process standards, the long-arm statute requirements are

8

satisfied. *See Moki Mac*, 221 S.W.3d at 575. Therefore, we will consider whether jurisdiction over appellant is consistent with due process. *See Max Protetch,* 340 S.W.3d at 885.

### 2. Specific Jurisdiction

For a Texas forum to properly exercise specific jurisdiction in this case, (1) appellants must have made minimum contacts with Texas by purposefully availing themselves of the privilege of conducting activities here, and (2) appellant's liability must have arisen from or relate to those contacts. *Culture Collection,* 83 S.W.3d at 806. Before deciding whether appellant's liability arose from or related to its forum contacts, we must first examine the nature of those contacts and whether appellants purposefully availed themselves of the privilege of conducting business here. *Moki Mac*, 221 S.W.3d at 576; s*ee Michiana*, 168 S.W.3d at 784–85.

### a. Purposeful Availment

The "purposeful availment" inquiry has three parts. *Moki Mac*, 221 S.W.3d at 575; *Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC*, 324 S.W.3d 840, 847 (Tex. App.—Houston [14th Dist.] 2010, no pet.). First, only the defendant's contacts with the forum are relevant. *Moki Mac*, 221 S.W.3d at 575. Second, the contacts on which jurisdiction depends must be purposeful, rather than random, fortuitous, or attenuated. *Id.* Third, "the 'defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction.'" *Id.* (quoting *Michiana,* 168 S.W.3d at 785).

In determining whether appellants purposefully directed action toward Texas, we may look to conduct beyond the business transaction at issue: "[a]dditional conduct of the

9

defendant may indicate an intent or purpose to serve the market in the forum State."
*Moki Mac*, 221 S.W.3d at 577 (quoting *Asahi Metal Ind. Co. v. Superior Court*, 480 U.S. 102, 112 (1987)); *see Michiana*, 168 S.W.3d at 786 (stating that Texas "cases appear to follow the 'additional conduct standard'"). Only appellant's Texas contacts are relevant. *See Moki Mac*, 221 S.W.3d at 575.

The first Texas contact we examine is appellants' website. It is constitutionally permissible to exercise personal jurisdiction over one who conducts activity over the internet in a commercial nature and quality. *Experimental Aircraft Ass'n*, 76 S.W.3d at 506; *see Jackson v. Hoffman*, 312 S.W.3d 146, 154 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Internet contacts are evaluated on a sliding scale with passive websites on one end and active websites using file transmission on the other. *Experimental Aircraft Ass'n*, 76 S.W.3d at 506.

Here, appellants operate an interactive website. The site heavily promotes appellants' products, with tabs identifying different categories of products. The site has a tab for "unit converter menu" as well as tabs to email the company. Additionally, the website has a page about appellants' distributors, apparently with links to email the distributors directly. The level of interactivity and commercial nature of the exchange of information on appellants' website supports a finding of purposeful availment. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("It is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence

10

within a state in which business is conducted."); *see Experimental Aircraft Ass'n,* 76 S.W.3d at 507.

Appellants' other contacts in Texas support a finding of purposeful availment. Other marketing efforts show appellants intended to promote business in Texas, such as claiming to have showrooms and engineers in Texas to solicit business from potential customers. According to Mardel, appellants communicated regularly with Mardel regarding product orders and intentionally represented to others that Mardel was appellants' Texas distributor. In addition, appellants asked Mardel to use Atlantis's logo to promote more business, presumably to increase sales in Texas. The record shows that appellants' contacts with Texas exceeded taking orders and shows appellants attempted to engage and then increase their business presence in Texas. This conduct tips the scales from appellants' passively delivering goods where told to actively promoting their business and seeking additional contact with Texas, thus purposefully availing themselves of the privilege of conducting business in Texas. *See Michiana*, 168 S.W.3d at 789–90 & n.70; *Max Protetch,* 340 S.W.3d at 886.

The second part of the purposeful availment test analyzes the purposefulness of the contacts. As discussed above, appellants' contacts were not unilaterally from Mardel, as alleged by appellants, nor were they random and fortuitous. *See Moncrief,* 414 S.W.3d at 154. A nonresident cannot escape a forum state's jurisdiction by having no office, employees, or inventory there, *see Int'l Shoe*, 326 U.S. at 313–14, and targeted marketing efforts in a state to generate business there suffices to justify jurisdiction in disputes arising from that business. *IRA Resources, Inc.*, 221 S.W.3d at 597; *Moki Mac,*

11

221 S.W.3d at 575–76. Appellants engaged in such conduct. It would be disingenuous for appellants to claim their contacts with Texas were not purposeful given that they represented having a distributor in Texas.

Lastly, the record shows that appellants have sought a benefit, profit, or advantage in Texas. Mardel placed numerous orders with appellants over a three-year period. The invoices show that Mardel placed orders with Atlantis totaling nearly one hundred thousand dollars. At the time Mardel filed its original petition, Atlantis still had not delivered a shipment of goods to Mardel, despite receiving payment.

We conclude the pleadings and evidence support the conclusion that appellants purposefully availed themselves of the privilege of conducting activities in Texas.

### b. Substantial Connection to the Operative Facts of the Litigation

Specific jurisdiction exists only if the alleged liability arises out of or is related to the defendant's activity within the forum. *Moki Mac*, 221 S.W.3d at 573. Mardel's claims arose from the alleged failure to receive its orders timely, from allegedly false statements pertaining to appellants' ownership of factories in China, and from the promise to deliver the products to Mardel within a specified time. Therefore, appellants' communications with Texas form the basis of this litigation. *See Max Protetch*, 340 S.W.3d at 888; *Glencoe Capital Partners II, L.P. v. Gernsbacher*, 269 S.W.3d 157, 167 (Tex. App.—Fort Worth 2008, no pet.) ("Unlike the misrepresentations in *Moki Mac*, which were tangential to the plaintiff's core negligence claim, appellant's misrepresentations in this case are the core of appellees' claims."). Appellants' liability, if any, arises directly from and relates to their contacts with Texas. *See Glencoe*, 269 S.W.3d at 167. We

12

conclude that there is evidence that Mardel's claims arose out of or were related to appellant's business in Texas, and that appellants had the necessary minimum contacts with Texas. *See Max Protetch,* 340 S.W.3d at 888.

### c. Fair Play and Substantial Justice

In addition to minimum contacts, due process requires that the exercise of personal jurisdiction comply with the traditional notions of fair play and substantial justice. *Moncrief,* 414 S.W.3d at 154. In a special appearance, a defendant must present "'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Max Protetch*, 340 S.W.3d at 888 (quoting *Rudzewicz*, 471 U.S. at 477). Appellants present no argument as to why litigation in Texas would be inefficient or burdensome, and neither party suggests what evidence might be necessary for litigation. Since most evidence appears to be documents, there is no undue burden in producing the evidence in Texas. *See id.* at 888–89. Furthermore, appellants fail to assert Texas law would not apply to this action or that application of Florida law would be difficult for a Texas court. *Id.* Finally, Texas has a manifest interest in providing its residents with a convenient forum for redressing injuries that out-of-state actors inflict. *Id.*; *Rudzewicz*, 471 U.S. at 479–82.

### 3. Summary

The record establishes that appellants have sufficient minimum contacts with Texas to establish personal jurisdiction and the exercise of that jurisdiction will not offend the traditional notions of fair play and substantial justice. *See Moncrief*, 414 S.W.3d at 157; *Moki Mac*, 221 S.W.3d at 585. We overrule appellants' issues.

### III.    CONCLUSION

We affirm the trial court's ruling denying appellant's special appearance.

_____
GREGORY T. PERKES
Justice

Delivered and filed the
18th day of December, 2014.