

# Missouri Court of Appeals
## Southern District
### Division Two

| | | |
|---|---|---|
| PATRICIA PHILLIPS, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD37327 |
| | ) | |
| LARY JENKINS, | ) | FILED: June 16, 2022 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF DALLAS COUNTY

Honorable Michael O. Hendrickson, Judge

**<u>AFFIRMED</u>**

Lary Jenkins appeals the circuit court's judgment denying his motion to strike the registration of a Texas judgment ("the foreign judgment") that his niece, Patricia Phillips, obtained against him in the District Court of Brazoria County, Texas ("the Texas court"). *See* section 511.760; Rule 74.14.[1] In two points, Jenkins contends that the court erred in determining that Texas had the necessary personal jurisdiction over him to render the foreign judgment because (1) "the trial court's findings that [Jenkins] purposely availed himself of Texas jurisdiction erroneously applied the law" and (2) "the trial court's findings that jurisdiction in Texas under these facts comported with fair play and substantial justice erroneously applied the

---

[1] All statutory references are to RSMo (2016) and all rule references are to Missouri Court Rules (2022).

law[.]"  Because Jenkins has failed to establish any erroneous application of law by the circuit court in its judgment, we affirm.

## Applicable Principles of Review

> Under article IV, section 1 of the United States Constitution, this Court must give full faith and credit to the valid judgment of a sister state unless there is (1) a lack of subject matter jurisdiction, (2) a lack of personal jurisdiction, or (3) fraud in the procurement of the judgment.  A foreign judgment, regular on its face, is entitled to a strong presumption that the foreign court had jurisdiction both over the parties and the subject matter and the court followed its laws and entered a valid judgment. The burden to overcome the presumption of validity and jurisdiction must be met with the clearest and most satisfactory evidence, and this burden lies with the party asserting the invalidity of the foreign judgment.

*Peoples Bank v. Frazee*, 318 S.W.3d 121, 126-27 (Mo. banc 2010) (footnote, internal quotation marks, and citations omitted).

As to the issue of personal jurisdiction, a defendant may challenge, during the registration process in a Missouri circuit court, whether a foreign court had personal jurisdiction if the issue has not already been previously litigated.  *Id.* at 127.  The Missouri circuit court's decision regarding personal jurisdiction and whether a foreign judgment should be registered are legal conclusions subject to a *de novo* review on appeal.  *Id.*  Here, because the foreign judgment was rendered by a Texas court, we look to Texas' substantive law to determine whether the Texas court had personal jurisdiction over Jenkins. *See id.* at 128.

However, "[t]he facts and circumstances considered in determining whether personal jurisdiction exists are those found by the registering and enforcing jurisdiction, rather than the rendering jurisdiction." *Id.*  "Therefore, this jurisdictional inquiry can be made without deferring to any of the jurisdictional facts recited in the foreign judgment, and Missouri civil procedure rules will govern the proceedings in the circuit court and this Court's review of the circuit court's judgment." *Id.* (citation omitted).  "Under Missouri's procedural rules, if personal jurisdiction is challenged in a motion to register a foreign judgment, the parties may present affidavits to

2

supplement the pleadings or the court may direct that the matter be heard wholly or partly on oral testimony or deposition." *Id.* (internal quotation marks omitted). "The circuit court can believe or disbelieve any statement in such affidavits, and factual determinations are within the sole discretion of the circuit court." *Id.* Additionally, "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(c).

### Factual and Procedural Background

The Texas court issued the foreign judgment in favor of Phillips and against Jenkins after Jenkins failed to answer or appear for trial and was found to be in default. The Texas court stated that it heard evidence on liability and damages and found, in pertinent part, as follows: Jenkins entered into a contract to sell Phillips "farm land located at 17 Bentwood Lane, Tunas, Missouri 65764 for $150,000.00 to be paid by [Phillips] with a one-time down payment of $50,000.00 and $10,000.00 cash payment annually or two $5,000.00 cash installment options to be paid two times a year over a period of ten years" ("the contract"); Phillips "paid the one time cash down payment of $50,000.00" and the "$10,000.00 cash payment for the annual payment in 2019"; Jenkins "breached the contract"; Jenkins "fraudulently induced [Phillips] to enter into the contract, in violation of section 27.01 of the Texas Business & Commerce Code by making [a] false promise . . . with actual awareness of its falsity"; and Jenkins' "course of conduct in the transaction was unconscionable in violation of section 17.50 of the Texas Business & Commerce Code." The Texas court awarded, in Phillips' favor and against Jenkins, $61,400 in actual damages, $180,000 in punitive damages, attorney fees, and pre- and post-judgment interest.

Thereafter, Phillips filed an authenticated copy of the foreign judgment with the Circuit Court of Dallas County, Missouri, and the court issued notice thereof to Jenkins. Jenkins then filed a motion to strike the registration of the foreign judgment asserting that, among other

3

things, the Texas court lacked personal jurisdiction to render the foreign judgment.  In support of that motion, Jenkins presented his affidavit testimony, his in-person testimony, and exhibits consisting of the contract; an April 14, 2020, letter that Jenkins sent to Phillips accusing her of defaulting on her obligations under the contract ("the letter alleging default"); Phillips' petition against Jenkins filed in the Texas court; and the resulting foreign judgment.

The contract contains two pages, each signed by Jenkins and Phillips, with the first page dated December 6, 2018, and the second page dated December 7, 2018.  Generally, the first page is titled "Agreement for Sale of Property" and contains a legal description of the subject property of the contract, a statement that the parties "are awaiting for [sic] additional detailed information about the house and the 40 acres that are included in the purchase[,]" and a statement that the down payment "is a onetime cash payment of $50,000.00."  The second page contains the terms of the sale.  The terms listed, *in toto*, are as follows:

1. Total sale price is $150,000.00

2. Zero percent interest

3. $50,000.00 one time, cash down payment due December, 2018

4. $10,000.00 cash payment, paid annually over a period of ten years, or sooner

5. Two, $5,000.00 cash installment options may be paid bi-annually (January and June)

6. The Deed will remain in Lary Jenkins name and Patricia Phillips as beneficiary until said debt is paid.

7. Lary Jenkins is responsible for all fixed expenses and miscellaneous expenses

8. Lary Jenkins is responsible for regular maintenance and repairs

9. Homeowners Insurance to be paid by Patricia Phillips, to company of Lary's choosing

10. Real Estate Taxes to be paid by Patricia Phillips

4

11. Lary Jenkins is to remain a permanent resident for life without ever paying to live there

*We need the Deed for the house and acreage to be listed

*Lary needs to make changes in his Last Will and Testament making clear the beneficiary and send Patricia a copy

*Patricia needs to create a Last Will and Testament claiming the debt and who the beneficiary will be upon her death, and send Lary a copy

*Patricia will put Lary's name on her private bank box at Wells Fargo Bank in Angleton, TX. The only other person who will be on the list is Mikey when he is 25 years old.

The petition filed by Phillips in the Texas court alleged that the Texas court had personal jurisdiction over Jenkins because "he entered into a contract performable in whole or in part in Texas, and committed torts in the [sic] Texas as hereafter more fully appears; and the causes of action asserted herein arise out of the business done and the torts committed by Jenkins in this State." The petition asserted claims for declaratory judgment regarding the parties' rights and obligations under the contract; statutory, constructive, and common law fraud arising from the misrepresentation by Jenkins that he intended to perform under the contract; breach of fiduciary duty; and violation of the Texas Deceptive Trade Practices Act.

In his affidavit and in-person testimony, Jenkins made several admissions relevant to the issue of personal jurisdiction. Jenkins admitted that, on December 6 and 7, 2018, he met with Phillips in Texas where they executed the contract in writing; that, while Jenkins was in Texas, he received from Phillips a $50,000.00 payment in accordance with the terms of the contract; that Phillips paid Jenkins an additional $10,000.00 in 2019; and that Jenkins sent the letter alleging default to Phillips.

5

The circuit court entered its judgment concluding that Texas had specific personal jurisdiction over Jenkins with regard to the claims in Phillips' petition. That conclusion was accompanied by the explicit findings of fact[2] as follows:

> Plaintiff was a Texas resident, she drafted the contract in Texas, the contract was executed by plaintiff and defendant in Texas, plaintiff complied with one or more of her financial obligations under the contract by delivering money to defendant in Texas, defendant was to amend his will and deliver it to plaintiff in Texas, and in her suit plaintiff alleged defendant committed a tort in whole or in part in Texas.

Ultimately, following its legal conclusions relevant to its jurisdiction determination, the court overruled Defendant's motion to strike the registration of the Texas judgment.

Jenkins timely appeals.

## Discussion

"Texas courts may assert *in personam* jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, *and* (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees." **Moki Mac River Expeditions v. Drugg**, 221 S.W.3d 569, 574 (Tex. 2007) (emphasis added). Jenkins does not dispute that Phillips' claims against him fall within the literal language of the Texas long-arm statute. *See* Tex. Civ. Prac. & Rem. Code § 17.042.

We, therefore, move to the requirement that the Texas court's assertion of personal jurisdiction over Jenkins comport with due process. "Due process requires 'fair warning that a particular activity may subject [the potential defendant] to the jurisdiction of a foreign sovereign,' thereby assuring 'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that

---

[2] These findings of fact were made gratuitously by the circuit court. Jenkins made no timely Rule 73.01 request for findings of fact.

6

conduct will and will not render them liable to suit.'" ***GJP, Inc. v. Ghosh,*** 251 S.W.3d 854, 868

(Tex. Ct. App. 2008) (quoting ***Burger King Corp. v. Rudzeqicz***, 471 U.S. 462, 472 (1985)).

"This requirement is frequently stated in terms of the 'foreseeability that the defendant's conduct

and connections to the forum State are such that he should reasonably anticipate being haled into

court there.'" ***Id.*** (quoting ***World-Wide Volkswagen Corp. v. Woodson***, 444 U.S. 286, 297

(1980)).

"This overarching reasonableness inquiry has been refined into a two-part test: the

assertion of jurisdiction over an out-of-state defendant who does not consent comports with due

process when the defendant has established 'minimum contacts' with Texas and the exercise of

jurisdiction is consistent with 'traditional notions of fair play and substantial justice.'" ***Id.***

(quoting ***Moki Mac River Expeditions***, 221 S.W.3d at 575); *accord* ***International Shoe Co. v.***

***Washington***, 326 U.S. 310, 316 (1945). Thus, Texas courts consider first whether the defendant

has established minimum contacts with Texas and, if that threshold is met, then consider whether

the assertion of jurisdiction comports with fair play and substantial justice. ***Id.*** (citing ***BMC***

***Software Belgium, N.V. v. Marchand***, 83 S.W.3d 789, 795 (Tex. 2002)).

Here, Jenkins, in his first point, challenges the circuit court's determination that he has

established the necessary minimum contacts with Texas for the assertion of personal jurisdiction

and, in his second point, the court's determination that Texas' assertion of personal jurisdiction

over Jenkins comports with fair play and substantial justice.

### *Point 1 – Jenkins Established Necessary Minimum Contacts with Texas*

In his first point, Jenkins contends:

> The trial court erred in finding and concluding that Texas had specific personal
> jurisdiction over [Jenkins] under the factual record of this case because the trial
> court's findings that [Jenkins] purposely availed himself of Texas jurisdiction
> erroneously applied the law, in that the actions of [Jenkins] in contracting with
> [Phillips] in Texas, taken alone, establish as a matter of law that such limited

7

contacts with Texas were random, fortuitous, and were not taken to seek benefit, advantage, or profit through Texas forum.

Jenkins is incorrect.

"In deciding whether minimum contacts exist, we must consider whether the nonresident defendant has 'purposefully availed [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Antonio v. Marino*, 910 S.W.2d 624, 627 (Tex. Ct. App. 1995) (quoting *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)). In the context of a breach of contract, however, the mere "awareness that a contracting party is a Texas resident does not necessarily constitute 'purposeful availment' for jurisdictional purposes." *Counter Intelligence, Inc. v. Calypso Waterjet Systems, Inc.*, 216 S.W.3d 512, 518 (Tex. Ct. App. 2007) (citing *Burger King Corp.*, 471 U.S. at 478)). "A plaintiff's unilateral actions in soliciting a contract or in carrying out the terms of a contract are irrelevant to a due process consideration." *J.D. Fields & Co., Inc. v. W.H. Streit, Inc.*, 21 S.W.3d 599, 603 (Tex. Ct. App. 2000) (citing *U–Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 763 (Tex. 1977)). Rather, "we consider (1) prior negotiations, (2) contemplated future consequences, (3) terms of the contract, and (4) the actual course of dealing." *Gustafson v. Provider HealthNet Services, Inc.*, 118 S.W.3d 479, 483 (Tex. Ct. App. 2003) (citing *Burger King Corp.*, 471 U.S. at 479)). Additionally, in the context of the commission of a tort, merely "'direct[ing] a tort' at Texas is insufficient alone to establish jurisdiction." *Bryan v. Gordon*, 384 S.W.3d 908, 916 (Tex. Ct. App. 2012) (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790-91 (Tex. 2005)).

With these principles in mind, the overall inquiry to establish purposeful availment involves three parts.[3] ***Moki Mac River Expeditions***, 221 S.W.3d at 575. We address all three. The first part of the inquiry is the premise that "only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person." ***Id.*** (citing ***Michiana Easy Livin' Country, Inc.***, 168 S.W.3d at 785).

In his argument addressing the first part of purposeful availment, Jenkins attempts to minimize his contacts with Texas. The following contacts, according to Jenkins, constitute the entirety of all of his contacts pertinent to a purposeful availment inquiry:

- "[Jenkins] travelled to Texas on December 6 and 7 of 2018 for the separate purpose of retrieving a television."[4]

- "While there, [Jenkins] met with [Phillips] and executed the real estate contract (for Missouri real estate) that had been negotiated entirely in the State of Missouri between the parties,[[5]] and [Jenkins] received the initial down payment on the contract."

---

[3] Additionally, when, as in this case, the only dispute is to whether the forum has *specific* jurisdiction over the defendant, there is the requirement that the claims "arise out of or are 'related to' the defendant's contacts with the forum." ***Searcy v. Parex Resources, Inc.***, 496 S.W.3d 58, 67 (Tex. 2016) (quoting ***Helicopteros Nacionales de Colombia, S.A. v. Hall***, 466 U.S. 408, 414 nn.8, 9 (1984)). Here, Jenkins asserts no claim of circuit court error related to this requirement and whether his contacts, to the extent they exist, arise out of or are related to the claims Phillips raises in her petition.

[4] The primary significance of this assertion at this point in our analysis is that Jenkins traveled to Texas of his own volition and thereby initiated contact with Texas. Jenkins' asserted purpose for the trip, however, is not a fact specifically found by the circuit court. Because "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in *accordance* with the result reached[,]" *see* Rule 73.01(c) (emphasis added), this asserted purpose *contrary* to the result reached may not be considered by this Court and is ignored. Rather, to the extent that the purpose of the trip is relevant to the personal jurisdiction analysis, as Jenkins seems to imply by including this assertion, when we view the facts in accordance with the result reached, the evidence gives rise to the reasonable inference that Jenkins' purpose in making the trip to Texas was to complete contract negotiations in Texas, *see* footnote 5, obtain Phillips' execution of the contract in Texas, and retrieve $50,000.00 from her in Texas.

[5] The circuit court did not make a specific finding that the contract "had been negotiated entirely in the State of Missouri between the parties" as Jenkins asserts. For the same reasons as explained more fully in footnote 4, this asserted fact is *contrary* to the result reached by the circuit court and cannot be considered by this Court in our analysis. Rather, to the extent that the location of negotiations is relevant to that analysis, the evidence that Jenkins and Phillips agreed to the sale of the property on December 6, 2018, agreed on that day they needed more information about the property, and then agreed to the terms of the sale a day later on December 7, 2018, all while in Texas, gives rise to the reasonable inference that some negotiations between the parties occurred in Texas between the time the two documents comprising the contract were signed.

9

- "[Jenkins] additionally sent a default letter to [Phillips] from Missouri to [Phillips] in Texas."

However, Jenkins either ignores or fails to incorporate into a broader analysis, at the least, the following additional contacts he established with Texas:

- The terms of the contract required Jenkins "to make changes in his Last Will and Testament making clear the beneficiary" and to "send" Phillips (who resides in Texas) a copy.

- The terms of the contract also required Phillips to put Jenkins' "name on her private bank box at Wells Fargo Bank in Angleton, TX." While this provision directs action by Phillips in Texas, it also evidences that Jenkins contemplated a future consequence in which he would have access to the said bank box in Texas.

- Phillips' petition, which resulted in a default judgment against Jenkins, contained the allegation that Jenkins "committed torts in [Texas]" and goes on to allege torts involving a misrepresentation by Jenkins that he intended to perform under the contract when he did not intend to do so.

Taken together, these contacts reflect more than a contract or tort merely involving or directed at a Texas resident. Instead, Jenkins personally went to Texas where he entered into the contract, *and* the contract contained provisions requiring Jenkins to perform multiple acts, in whole or in part, in Texas, *and*, while in Texas, Jenkins allegedly made a misrepresentation to Phillips. *Cf. Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 886 (Tex. Ct. App. 2011) ("In the present case, however, Herrin not only alleged a contract to be performed in part in Texas, but also regular communication between Protetch personnel and Herrin, including a face-to-face

10

meeting in Houston during which Mr. Protetch allegedly made misrepresentations inherently related to the contract and which could support a separate cause of action in tort.").

We turn next to the second part of the purposeful availment inquiry, which requires that "the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated." *Moki Mac River Expeditions*, 221 S.W.3d at 575 (citing *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 785; *Burger King Corp.*, 471 U.S. at 476 n.18; *World–Wide Volkswagen Corp.*, 444 U.S. at 297). "Thus, 'sellers who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to the jurisdiction of the latter in suits based on their activities.'" *Id.* (quoting *Michiana*, 168 S.W.3d at 785); *accord Burger King Corp.*, 471 U.S. at 473.

With regard to whether his contacts with Texas were purposeful, Jenkins makes the following argument:

> Additionally, [Jenkins] in this case submits that in reality it was merely fortuitous that he happened to be in Texas on December 6 and 7 of 2018 for the separate purpose of picking up a television with his sister. While in Texas for this separate purpose, [Jenkins] obliged [Phillips] by meeting with her, executing the contract, and receiving her down payment. Under these facts, it cannot be said that [Jenkins] was attempting to purposely avail himself of some protection or benefit in the State of Texas for the purpose of establishing specific personal jurisdiction.

(Record citation omitted.) This argument fails for two reasons.

First, regarding his personal motivation for traveling to Texas, Jenkins relies entirely on his own self-serving testimony. However, the circuit court, in its discretion, was completely free to disbelieve all of the testimony upon which Jenkins relies. *See Peoples Bank*, 318 S.W.3d at 128.[6]

---

[6] Because Jenkins had the burden of proof on this issue, *Peoples Bank*, 318 S.W.3d at 127, the circuit court's disbelief of his testimony as to the purpose of his trip was sufficient to find the issue against him. Although not required, there is, nevertheless, substantial evidence in the record supporting the circuit court's finding against

11

Second, even assuming that Jenkins' testimony as to his personal motivation for traveling to Texas was credited by the circuit court, which it was not, he, nevertheless, purposefully chose to use that visit to execute the contract and, while there, is alleged to have engaged in tortious conduct. An argument similar to Jenkins' was proffered and rejected in *GJP, Inc.*:

> We cannot agree with appellants that Herting's physical presence in Texas when closing the sale is "fortuitous" rather than "purposeful" in the sense the United States and Texas supreme courts have employed those concepts. Although his previously-planned trip to pick up the race car from Classic Jaguar may have fortuitously created a good *opportunity* to perform the sale in Texas, Herting nonetheless acted purposefully in opting to do so. In contrast to the shipowner in *Antonio*, who had no control over where the ship would port, *Antonio*, 910 S.W.2d at 627–28, or *Michiana*, who had no say over where the RV would end up, *Michiana*, 168 S.W.3d at 787, there is legally and factually sufficient evidence to support the trial court's implied findings that Herting had discretion and control over whether he would close the sale in Texas.

251 S.W.3d at 879-80 (some italics added). For the same reasons outlined in *GJP, Inc.*, Jenkins' attempt to recast and recharacterize his purposeful conduct in Texas as fortuitous fails.

Finally, we turn to the third part of the purposeful availment inquiry requiring that the "'defendant must seek some benefit, advantage or profit by 'availing' itself of the jurisdiction.'" *Moki Mac River Expeditions*, 221 S.W.3d at 575 (quoting *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 785). "In contrast, a defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there." *Id.* (citing *Burger King*, 471 U.S. at 472).

Jenkins asserts that "[t]here are no facts in the record for which [Phillips] can reasonably assert that [Jenkins] sought to benefit, profit, or advantage by availing himself of Texas jurisdiction by meeting with and signing the contract with [Phillips] in Texas." This argument fails for the simple reason that it ignores that Jenkins received and retained $50,000.00 from

Jenkins on this issue and, as explained in footnote 4, that the purpose for which Jenkins made the trip to Texas was to retrieve $50,000.00 from Phillips.

12

Phillips, while in Texas at the time he entered into the contract and engaged in an alleged misrepresentation, and then later received an additional $10,000.00 from Phillips. *Cf. **Max Protetch, Inc.***, 340 S.W.3d at 887 (holding that Protetch benefited by contracting for and receiving $65,000.00 from Herrin in exchange for a table and, due to an alleged misrepresentation and refusal to return the payment, has further benefited by retaining both the payment and the table).

For all of the foregoing reasons, Jenkins has failed to establish that the circuit court misapplied the law in its judgment in concluding that Jenkins purposely availed himself of Texas jurisdiction. *See **Peoples Bank***, 318 S.W.3d at 126-27; ***Moki Mac River Expeditions***, 221 S.W.3d at 575. Point 1 is denied.

### *Point 2 – Texas Jurisdiction Comports with Fair Play and Substantial Justice*

In his second point, Jenkins contends:

> The trial court erred in finding and concluding that Texas had specific personal jurisdiction over [Jenkins] under the factual record of this case because the trial court's findings that jurisdiction in Texas under these facts comported with fair play and substantial justice erroneously applied the law, in that the factual record establishes as a matter of law that the burden to [Jenkins] in defending himself in Texas would be an unreasonable burden; and in that Texas has little interest in litigating disputes over Missouri real estate transferred under Missouri law; and in that resolution of the parties' dispute in Missouri would be the most convenient and effective relief.

Again, Jenkins is incorrect.

"Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice." ***Guardian Royal Exchange Assur., Ltd.***, 815 S.W.2d at 228 (citing ***Asahi Metal Indus. Co. v. Superior Court***, 480 U.S. 102, 113–15 (1987); ***Burger King***, 471 U.S. at 476). "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial

13

justice when the nonresident defendant has purposefully established minimum contacts with the forum state." ***Retamco Operating, Inc. v. Republic Drilling Co.***, 278 S.W.3d 333, 341 (Tex. 2009) (internal quotation marks omitted). Nonetheless, the factors considered are: "(1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies." ***Id.***

Jenkins asserts that these factors weigh in his favor for three reasons. First, "there would be a substantial burden to [Jenkins], a Dallas County, Missouri resident," for the reasons that he would have to "hire counsel, travel, and to defend himself in Texas, especially on a contract dealing squarely with Missouri real estate and that was negotiated entirely in Missouri."[7] Jenkins, however, provides no explanation as to why, or even if, his asserted burden outweighs Phillips' "interest in obtaining convenient and effective relief[.]" ***Id.*** In the event of a suit in either state, the onus of travel would be placed on one or another of the parties. Moreover, according to his own testimony, Jenkins has previously subjected himself to the burden of traveling to Texas, when what was at stake was not litigation, but purportedly only a television.

Second, Jenkins asserts that "the State of Texas has little interest in settling real estate disputes for property located and transferred in accordance with Missouri law." This argument misconstrues Phillips' lawsuit, which had nothing to do with the transfer of property under Missouri law. Rather, Phillips' claims generally involved claims for breach of a contract executed and partially performed in Texas and for tortious acts allegedly committed in Texas. As relevant here, "Texas has a manifest interest in providing its residents with a convenient

---

[7] See footnote 5 as to why the last factual assertion is not accurate under our standard of review.

forum for redressing injuries that out-of-state actors inflict." *Max Protetch, Inc.*, 340 S.W.3d at 888-89.

Finally, Jenkins asserts that "as between Texas and Missouri, the facts of the instant case demonstrate that the State of Missouri is the most convenient and efficient forum for resolving the dispute between the parties." Jenkins, however, provides no explanation or support for this conclusory assertion.

Accordingly, Jenkins has failed to establish that the circuit court misapplied the law in its judgment by concluding that Texas' exercise of personal jurisdiction over him did not offend traditional notions of fair play and substantial justice. *See Peoples Bank*, 318 S.W.3d at 126-27; *Retamco Operating, Inc.*, 278 S.W.3d at 341. Point 2 is denied.

<u>Decision</u>

Because Jenkins has failed to establish any misapplication of law by the circuit court as asserted in his points, the circuit court's judgment is affirmed.

GARY W. LYNCH, C.J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

JENNIFER R. GROWCOCK, J. – CONCURS

15