**Affirmed and Memorandum Opinion filed April 11, 2023.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00504-CV

---

### DANUEL R. STANGER AND STEVEN PETERSON, Appellants

### V.

### DEREK LOETZERICH, AS RECEIVER FOR AND ON BEHALF OF JUDGMENT CREDITOR RITA MULLINS, Appellee

---

**On Appeal from the 157th District Court
Harris County, Texas
Trial Court Cause No. 2020-47794**

---

### MEMORANDUM OPINION

Appellants Steven Peterson and Danuel R. Stanger bring this interlocutory appeal from the trial court's denial of their special appearance. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7); Tex. R. Civ. P. 120a. Appellee Derek Loetzerich, as receiver for Rita Mullins, sued Peterson and Stanger for fraudulent conveyance, fraud, and civil conspiracy. In Peterson and Stanger's special appearance, they challenge the exercise of personal jurisdiction over them because they are residents

of Utah. Concluding that the trial court properly denied Peterson and Stanger's special appearance, we affirm.

## *Background*

On October 5, 2017, Rita Mullins obtained a default judgment of $125,000 with interest at the rate of five percent per annum against Waterford Westheimer Owner, LLC based on personal injuries she suffered because of defects in real property owned by Waterford Westheimer.[1] On July 14, 2020, Mullins filed an application to appoint a receiver and turnover of Waterford Westheimer's non-exempt personal property. On August 6, 2020, the trial court signed an order appointing Derek Loetzerich as receiver.

Loetzerich claims that Waterford Westheimer previously owned two multi-million-dollar apartment complexes located in Harris County, Texas. Unbeknownst to Mullins (and Loetzerich), Waterford Westheimer conveyed their interest in the two complexes to Bridge Acquisitions and Dispositions, LLC. Loetzerich also claims that Waterford Westheimer executed an assumption agreement whereby MTC Apartments Westheimer, LLC; MTC Apartments Westheimer 2, LLC; MTC Apartments 3 Westheimer 3, LLC; and ROC III TX Waterford Westheimer, LLC assumed Waterford Westheimer's outstanding liabilities.[2]

---

[1] At the time of Mullins' injury, her apartment complex was owned by Waterford Westheimer. At some point in 2014, prior to Mullins initiating this suit, Waterford Westheimer conveyed its interest in two apartment complexes, including Mullins' apartment complex, to Bridge Acquisitions and Dispositions, LLC. Thereafter, Bridge assigned its rights in the properties to four companies: MTC Apartments Westheimer, LLC; MTC Apartments Westheimer 2, LLC; MTC Apartments 3 Westheimer 3, LLC; and ROC III TX Waterford Westheimer, LLC. On August 1, 2015, Mullins filed her original petition against Bridge Property Management; MCT Apartments Westheimer, LLC; MTC Apartments Westheimer 2, LLC; MTC Apartments 3, LLC; and Waterford Westheimer Owner, LLC.

[2] Loetzerich did not file suit against these business entities, but for reference purposes, we will collectively refer to them as MTC Apartments when necessary. The named defendants in Loetzerich's petition are M. Patrick Carroll, Darren Devore, Nathan W. Ricks, Steven Peterson,

2

The assumption agreement provides that Waterford Westheimer was the "Original Borrower"; MTC Apartments is the "New Borrow"; Capital Markets, Inc. was the "Original Lender"; U.S. Bank National Association is the "Lender"; M. Patrick Carroll and Darren Devore were the "Original Guarantor"; and Nathan W. Ricks, Jonathan P. Slager, Donaldson L. Hartman, Peterson, and Stanger are the "New Guarantor."[3] Loetzerich asserts that Peterson and Stanger, along with the other named defendants, sought to conspire and conceal the aforementioned transaction for the purpose of delaying and hindering the collection efforts of Mullins, and this transfer constituted a fraudulent conveyance under Texas Business and Commerce Code sections 24.005(a) and §24.006 (a) and (b).[4] Loetzerich seeks to impose liability against Peterson and Stanger, along with the other named defendants, because Peterson and Stanger signed the assumption agreement as guarantors in their individual capacities relating to real property located in Harris County, Texas.

In Peterson and Stanger's special appearance and attached affidavits, each assert that they were residents of Utah, did not regularly conduct business in person in Texas, did not maintain any offices in Texas, did not pay taxes in Texas, and did not personally own or lease any property in Texas. They further claim that they do not have any ownership interest, employment, or management function at Waterford Westheimer.[5] At the hearing on the special appearance, Peterson and Stanger's counsel insisted that Peterson and Stanger both had no ties to Texas. At the

---

Danuel R. Stanger, Jonathan P. Slager, Donaldson L. Hartman, and Josh Champion.

[3] According to Loetzerich, no deed evidencing this transaction could be located in Harris County's real property records.

[4] There is no evidence provided in the record regarding current ownership of the properties, but the parties do not dispute that G & I IX Artesian, LP appears to be the current owner of said properties.

[5] The Texas Franchise Tax Public Information Report of Waterford Westheimer indicates that M. Patrick Carroll is the president and Darren Devore and Josh Champion are vice presidents.

conclusion of the hearing, the trial judge denied Peterson and Stanger's special appearance and did not enter separate findings of fact or conclusions of law.

## *Discussion*

In a single issue, Peterson and Stanger challenge the trial court's denial of their special appearance, arguing that the record showed insufficient contacts with Texas. In Loetzerich's special appearance response, he contends that the trial court has specific jurisdiction over Peterson and Stanger.

Whether a court has personal jurisdiction over a defendant is a question of law we review de novo. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). When, as here, the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex. 1987); *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984). When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *Zac Smith*, 734 S.W.2d at 666. For legal sufficiency points, if there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992).

Personal jurisdiction over nonresident defendants satisfies the constitutional requirements of due process when the defendant has purposefully established minimum contacts with the forum state and the exercise of jurisdiction is consistent with traditional notions of fair play and substantial justice. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 (Tex. 2016); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). A defendant establishes minimum contacts with a

forum if the defendant has purposely availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Moncrief*, 414 S.W.3d at 150; *Retamco*, 278 S.W.3d at 338. A defendant's minimum contacts may give rise to either specific jurisdiction or general jurisdiction. *Moncrief*, 414 S.W.3d at 150; *Retamco*, 278 S.W.3d at 338.

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. *See McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex. 1965). Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). A defendant challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985). A defendant can negate jurisdiction on either a factual or a legal basis. *Kelly*, 301 S.W.3d at 659.

To negate jurisdiction on a factual basis, the defendant must "present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations." *Id.* To negate jurisdiction on a legal basis, a defendant may show that even if the plaintiff's alleged facts are true, (1) the evidence is legally insufficient to establish jurisdiction; (2) the defendant's contacts with Texas do not amount to purposeful availment; (3) for specific jurisdiction, the plaintiff's claims do not arise from the defendant's contacts; or (4) the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Id.* The plaintiff can then respond with its own evidence that affirms its allegations, but it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. *Id.*

## I.     Did Peterson and Stanger Waive Their Special Appearance?

As a preliminary matter, we begin our analysis by considering Loetzerich's

5

assertion that Peterson and Stanger waived their special appearance by making a general appearance in the case. *See Dawson–Austin v. Austin*, 968 S.W.2d 319, 321 (Tex. 1998). Specifically, Loetzerich contends that analyzing the case before us under *Freimer*, Peterson and Stanger waived their special appearance by arguing the merits of two affirmative defenses and seeking relief based on those grounds, thereby invoking the judgment of the trial court on the merits of an issue unrelated to the special appearance. *See Freimer v. Escamilla*, No. 13-04-006-CV, 2006 WL 645340, at *1 (Tex. App.—Corpus Christi Mar. 16, 2006, pet. denied) (mem. op.). We disagree.[6]

To promote judicial economy, rule 120a provides a special appearance procedure by which a nonresident defendant may "challenge a court's jurisdiction without voluntarily subjecting himself to the jurisdiction of the court or waiving any objections to the court's actions." Tex. R. Civ. P. 120a; *see Conner v. ContiCarriers and Terminals, Inc.*, 944 S.W.2d 405, 409 (Tex. App.—Houston [14th Dist.] 1997, no writ) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985)). A party who does not strictly comply with rule 120a waives its special appearance and consents to personal jurisdiction. Tex. R. Civ. P. 120a ("Every appearance, prior to judgment, not in compliance with this rule is a general appearance."). A party is considered to have entered a general appearance and therefore consented to personal jurisdiction when the party "(1) invokes the judgment of the court on any question other than the court's jurisdiction, (2) recognizes by its acts that an action is properly pending, or (3) seeks affirmative action from the court." *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004); *see also Dawson–Austin*, 968 S.W.2d at 322. Such an appearance waives a defendant's challenge to personal jurisdiction. *See*

---

[6] We note that while we respect our sister court's decision as persuasive authority, we are not bound by their precedent. *See City of Houston v. Breckenridge*, No. 14-21-00086-CV, 2022 WL 4103202, at *5 (Tex. App.—Houston [14th Dist.] Sept. 8, 2022, no pet.) (mem. op.).

*Glob. Paragon Dallas, LLC v. SBM Realty, LLC*, 448 S.W.3d 607, 612 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In *Freimer*, appellants and appellee were research scientists in California. 2006 WL 645340 at *1. They entered into an agreement, which provided for collaboration between the parties on existing and future research. *Id.* Appellee later accepted a position in Texas and alleged that appellants failed to send him samples and data in accordance with the agreement. *Id.* Appellee filed suit in Texas, and appellants filed a special appearance. Appellee alleged that appellants waived their right to challenge the trial court's jurisdiction by arguing the affirmative defense of res judicata in appellant's "Reply to Plaintiff's Response on Defendants' Special Appearance." *Id.* at *3. After examining the reply and arguments at both special appearance hearings, the appellate court found that appellants did not argue the affirmative defense of res judicata, request dismissal of the suit on that basis, or request any other affirmative relief from the trial court. *Id.* at *3–4.

Here, we reject Loetzerich's waiver argument for the simple reason that there is no evidence before us that Peterson and Stanger requested relief inconsistent with their special appearance. Peterson and Stanger each filed a single instrument including a special appearance, answer, and affirmative defenses. They complied with rule 120a's due order of pleading requirement, and both the answer and affirmative defenses were expressly made subject to the special appearance.[7] The only hearing requested by Peterson and Stanger was on their special appearance, and the only pleading considered by the trial court was their special appearance.

---

[7] Rule 120a permits other pleas, pleadings, and motions to be "contained in the same instrument or filed subsequent thereto." *See* Tex. R. Civ. P. 120a. "The rule makes matters in the same instrument and subsequent matters subject to the special appearance without an express statement to that effect for each matter." *Dawson–Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998).

Moreover, the record does not show that they plead res judicata, much less have the trial court rule on any of their affirmative defenses before hearing their special appearance.[8]

At the conclusion of the hearing, the trial court overruled Peterson and Stanger's special appearance and made the following recitations in the order:

> The Court FINDS: (1) the Court has specific jurisdiction because Peterson and Stanger purposefully availed themselves by conducting a real estate transaction in Harris County, Texas under *Retamco Operating v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009); (2) the cause of action in this case is for activities after the previous dismissal of Peterson and Stanger, and thus res judicata does not apply; and (3) because the Assumption Agreement specifically assumes outstanding liabilities and debts of the sale, and because Peterson and Stanger each individually signed the Assumption Agreement, the Court has jurisdiction over each.

"The relevant inquiry 'is not what a court does in response' to the defendant's actions, but 'whether a defendant truly seeks any affirmative action from the court' by that action." *Glob. Paragon Dallas, LLC*, 448 S.W.3d at 612 (quoting *Angelou v. African Overseas Union*, 33 S.W.3d 269, 276 (Tex. App.—Houston [14th Dist.] 2000, no pet.). After examining the record, Peterson and Stanger did not invoke the judgment of the trial court on the merits of an issue unrelated to their special appearance or otherwise seek affirmative action from the court. We overrule Loetzerich's point and conclude that Peterson and Stanger did not waive their special appearance.

## II. Did Loetzerich Plead Sufficient Jurisdictional Facts?

We next turn to whether and how Loetzerich met his initial burden to plead

---

[8] The first mention of the term "res judicata" in the record was the proposed order prepared by Loetzerich.

jurisdictional facts to bring Peterson and Stanger within reach of the Texas long-arm statute. *See Kelly*, 301 S.W.3d at 659. Peterson and Stanger posit that the trial court could not permissibly rely on jurisdictional grounds raised by Loetzerich in his special appearance response because a special appearance response is not a "pleading." We disagree.

Though Loetzerich identifies Peterson and Stanger as defendants in his petition, Loetzerich's petition does not identify any jurisdictional connection with Texas.[9] Contrary to Peterson and Stanger's assertion, Loetzerich's petition, as well as his response to Peterson and Stanger's special appearance, can be considered in determining whether Loetzerich has met his burden. Tex. R. Civ. P. 120a(3); *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also Predator Downhole Inc. v. Flotek Indus., Inc.*, 504 S.W.3d 394, 402 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("[P]laintiff may carry that burden in its petition or in response to the defendant's special appearance"). We therefore address Loetzerich's jurisdictional allegations as raised in his petition and response to the special appearance. *See Kelly*, 301 S.W.3d at 658.

In Loetzerich's petition, he alleges that Peterson and Stanger sought to conspire and conceal certain transactions and conveyances of real property located in Harris County, Texas for the purpose of delaying and hindering Mullins' collection efforts pursuant to the Texas Uniform Fraudulent Transfer Act. *See* Tex. Bus. & Com. Code §§ 24.005(a), 24.006(a)–(b). Loetzerich alleges that "the

---

[9] When the pleading is wholly devoid of jurisdictional facts, the plaintiff should amend the pleadings to include the necessary factual allegations. *Kelly*, 301 S.W. 3d at 659; *see also* Tex. R. Civ. P. 63. While Loetzerich did not amend his petition, he did offer jurisdictional factual allegations in his response to Peterson and Stanger's special appearance. *See Predator Downhole Inc. v. Flotek Indus., Inc.*, 504 S.W.3d 394, 402 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

9

transfers were made to an insider without receiving a reasonably equivalent value and some were made to an insider for an antecedent debt." In his special appearance response, he avers that Peterson and Stanger are subject to specific jurisdiction because they signed an assumption agreement to purchase real property located in Texas. Specifically, Loetzerich alleges that Peterson and Stanger, in their individual capacities, signed the assumption agreement as guarantors.

We conclude that although tenuous, Loetzerich has satisfied his burden of pleading sufficient allegations to bring Peterson and Stanger within the reach of the Texas long-arm statute. *See* Tex. Civ. Prac. & Rem. Code § 17.042; *see also Retamco*, 278 S.W.3d at 337 ("[B]y taking assignment of Texas real property, [respondent] reached out and created a continuing relationship with Texas.").

## III. Personal Jurisdiction

We next consider whether and how Peterson and Stanger negated all bases of personal jurisdiction alleged. *See Kawasaki Steel Corp.*, 699 S.W.2d at 203. Peterson and Stanger argue that the evidence supporting the trial court's grounds for jurisdiction is legally and factually insufficient. Peterson and Stanger offer the following in support of their position: (1) there is no evidence that they signed any agreement *in* Texas; (2) they did not execute, in any capacity, the original purchase agreement transferring the apartment complexes from Waterford Westheimer to Bridge; (3) the assumption agreement does not concern a real property transaction; (4) Loetzerich's claims only concern the transfer of the apartment complexes; and (5) the only relevant contacts with Texas were in a representative capacity.[10]

When specific jurisdiction is asserted, our analysis focuses on the relationship

---

[10] Peterson and Stanger's second, third, and fourth argument each relate to the assumption agreement. As such, we will discuss these arguments collectively.

10

between the defendant, Texas, and the litigation to determine whether the plaintiff's claim arises from Texas contacts. *Moncrief*, 414 S.W.3d at 150. We analyze minimum contacts for specific jurisdiction on a claim-by-claim basis, unless all the claims arise from the same forum contacts. *Id.* at 150–51. Specific jurisdiction is established if the defendant's alleged liability arises out of, or is related to, an activity conducted within the forum. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007). For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Id.* at 585.

To assess whether a nonresident defendant has purposely availed itself of the privilege of conducting activities in Texas, we consider three factors. *Moncrief*, 414 S.W.3d at 151; *Retamco*, 278 S.W.3d at 338. First, only the defendant's own actions are relevant, not the unilateral activities of another party or a third party. *Moncrief*, 414 S.W.3d at 151; *Retamco*, 278 S.W.3d at 339. Second, a showing of random, isolated, or fortuitous contacts is insufficient. *Moncrief*, 414 S.W.3d at 151; *Retamco*, 278 S.W.3d at 339. Third, a defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Moncrief*, 414 S.W.3d at 151; *Retamco*, 278 S.W.3d at 339. We assess the quality and nature of the contacts, not the quantity. *Moncrief*, 414 S.W.3d at 151; *Retamco*, 278 S.W.3d at 339. At its core, the purposeful availment analysis seeks to determine whether a nonresident's conduct and connection to a forum are such that it could reasonably anticipate being hauled into court there. *Moncrief*, 414 S.W.3d at 152.

## A. Physically Entering Texas

Peterson and Stanger's argument that they are not subject to personal jurisdiction in Texas because they did not physically enter Texas has been expressly rejected by *Burger King*. 471 U.S. at 476 ("Jurisdiction . . . may not be avoided

11

merely because the defendant did not *physically* enter the forum state."). As explained in more detail below, Peterson and Stanger's contacts are sufficient for personal jurisdiction because they "purposefully availed [themselves] of the privilege of conducting activities" within Texas when they signed a contract regarding real property located in Texas that is governed by the laws of Texas. *See Moki Mac*, 271 S.W.3d at 575 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see also Retamco*, 278 S.W.3d at 339. To find otherwise simply because Peterson and Stanger did not physically enter Texas would offend well-established case law.

### B. Assumption Agreement

Peterson and Stanger assert that they are not subject to personal jurisdiction because they did not conduct a real property transaction in Texas; they only signed an assumption agreement. Peterson and Stanger argue that the assumption agreement is a contract for the transfer of loan payment obligations and not a real estate transaction. We disagree.

The primary consideration is not whether the assumption agreement is a real estate transaction but rather if there is a "substantial connection" between Peterson and Stanger's contacts with Texas and the operative facts of this litigation. *See Moki Mac*, 221 S.W.3d at 585.

In this case, Loetzerich's claims relate to an alleged fraudulent transfer of real property that precluded Mullins from enforcing her judgment against Waterford Westheimer. As purported evidence of the tort,[11] we have a written assumption agreement executed by Peterson and Stanger, in their individual capacities. Though an assumption agreement is not a real estate transaction per se, it is nevertheless a

---

[11] *See In re Tex. Am. Express, Inc.*, 190 S.W.3d 720, 725 (Tex. App.—Dallas, no pet.) (noting that a fraudulent transfer under the Uniform Fraudulent Transfer Act is a tort).

contract. *See* Tex. Civ. Prac. & Rem. Code § 17.042(2) ("[A] nonresident does business in this state if the nonresident commits a tort in whole or in part in this state."). The assumption agreement provides that the mortgaged property is located in Harris County, Texas, and it "will be construed in accordance with the laws of the Property Jurisdiction."

The real property and the alleged fraudulent transfer therefore are operative facts of this case, or at the very least, have a substantial connection to the operative facts of this case. *See Retamco*, 278 S.W.3d at 341. Without the real property, no fraudulent transfer could have occurred under the Texas Uniform Fraudulent Transfer Act. *See* Tex. Bus. & Com. Code § 24.002(2), (12). Based on the foregoing, Texas certainly has an interest in adjudicating this dispute.

Accordingly, Peterson and Stanger's contacts with Texas were purposeful, not random, fortuitous, or attenuated. *See Retamco*, 278 S.W.3d at 339. They were aware that the assumption agreement was to be construed in accordance with the laws of Texas, purposefully availed themselves of the privilege of conducting activities in Texas, and could have reasonably anticipated being called into a Texas court. *Id.*

## C. Representative Capacity

Peterson and Stanger's claim that their only relevant contacts with Texas were in a representative capacity is wholly inconsistent with the record before us. When an agent negotiates a contract for its principal in Texas, it is the principal who does business in this state, not the agent. *See Mort Keshin & Co. v. Houston Chron. Pub. Co.*, 992 S.W.2d 642, 647 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (citing *Ross F. Meriwether & Assoc., Inc. v. Aulbach*, 686 S.W.2d 730, 731 (Tex. App.—San Antonio 1985, no writ)). "A signature followed by corporate office will result in personal liability where the individual is clearly designated within the instrument as personal surety for the principal." *Material P'ships, Inc. v. Ventura*, 102 S.W.3d

252, 259 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (quoting *Gulf & Basco Co. v. Buchanan*, 707 S.W.2d 655, 657 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). "The fact that a person is under an agency relation to another which is disclosed does not prevent him from becoming personally liable where the terms of the contract clearly establish the personal obligation." *Am. Petrofina Co. of Tex. v. Bryan*, 519 S.W.2d 484, 487 (Tex. Civ. App.—El Paso 1975, no writ).

In the case before us, Waterford Westheimer assigned all of its rights, title, and interest in the mortgaged property to MTC Apartments. Both Peterson and Stanger signed the assumption agreement as "manager" on behalf of MTC Apartments. They also signed the assumption agreement as guarantors in their individual capacities. Though Peterson and Stanger's agency relation to MTC Apartments was disclosed, they nevertheless signed the assumption agreement in their individual capacities and thus became personally liable. *See id.*

### *Conclusion*

Focusing on the quality and not the quantity of the alleged Texas contacts, we conclude the evidence, viewed in the light most favorable to the trial court's ruling supports the trial court's denial of Peterson and Stanger's special appearance and does not offend traditional notions of fair play and substantial justice. *See Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991). We affirm the trial court's denial of Peterson and Stanger's special appearance.

/s Frances Bourliot
Justice

Panel consists of Justices Bourliot, Hassan, and Wilson.

14